UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEDRO ESPINOSA,

          Plaintiff,

v.

J. SALADIN and L. HUDSON,

          Defendants.

_____/

Case No. 1:08-cv-736

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

This matter is now before the court on defendants' motion for summary judgment (docket no. 13).

**I.**     **Background**

Plaintiff sets forth the following allegations.  On September 24, 2007, plaintiff

submitted a health care request regarding eye surgery that he was supposed to receive. Plaintiff was

housed at the Riverside Correctional Facility (RCF) at that time. The health care department

responded that:

> The eye doctor has not been at this facility for almost a month and he will not be
> back until we move to the new facility.  He will review your information at that time.

Health Care Request (Sept. 24, 2007) (docket no. 1-2).[1]  Plaintiff filed a grievance on October 5,

2007, stating that the results of his eye examination determined that he needed an operation and that

he had "no other choice but to file this grievance because I am rapidly losing my sight."  *See*

Grievance No. RCF 07100097912D2 (docket no. 1-2).   Plaintiff further alleged that he is being

---

[1] RCF was closed on November 3, 2007.  *See* www.michigan.gov/corrections (reference: Riverside
Correctional Facility).

discriminated against because another prisoner, Juan Gallardo, received laser treatment on his left eye.  Compl. at p. 3-2 (docket no. 1).

## II.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario*

*Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Discussion

It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976).  A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.   *Id.* at 8-9.  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted).  In addition, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*  at 9.

3

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Defendants Nurse Supervisor J. Saladin and Health Unit Manager (HUM) Hudson contend that plaintiff cannot maintain a § 1983 action against them because they were not personally involved in plaintiff's treatment. The court agrees. It is undisputed that on August 30, 2007, a staff doctor at TLC Eye Care of Jackson recommended cataract surgery for plaintiff "ASAP." *See* TLC report (docket no. 16-2). A subsequent "CMS Authorization request" states that plaintiff's cataract removal was not authorized, noting that plaintiff "has maintained acceptable L eye vision per Dr. Ivens." *See* CMS Authorization Request (docket no. 16-2). The request appears to have been processed on or about September 20, 2007. *Id.* [2]

In a memorandum to the grievance coordinator, Nurse Supervisor Saladin stated that she interviewed plaintiff on October 23, 2007. At the interview, plaintiff alleged that he sent several kites regarding eye surgery, that he received no response, and that he sought relief in the form of eye

---

[2] Although the facsimile transmission date is partially missing, it appears that the CMS Authorization Request was faxed to the MDOC on September 27, 2007. *See* docket no. 16-2.

surgery as recommended by a specialist.  *See* Memorandum (Oct. 23, 2007) (docket no. 1-2).  Nurse

Supervisor Saladin summarized the issue as follows:

> Investigation of the Grievant's issue reveals the patient was seen by the optometrist at [RCF] and was then referred to a specialist.  The patient was seen by the specialist who recommended that he have surgery on one eye.  A requst was made and it was determined that there is no medical indication to have the surgery done at this time.   The Medical Practitioner (MP) reviewed the specialist recommendations and test results and agrees with the decision that surgery is not necessary at this time.  The patient states that his good eye is going to go bad due to him not having surgery done on the bad eye.   He adds that if the specialist recommends surgery, it should be honored.

> Based on the above, a determination has been made that the recommended surgery is not deemed medically necessary at this time.  The patient should contact health care with any further concerns that arise.  The patient does not agree as he feels by not doing the surgery he is being put at risk for further eye damage and vision loss.

*Id.*  Both the memorandum and the Step I grievance response were signed by Nurse Supervisor

Saladin as respondent and HUM  Hudson as reviewer.  *Id.*

Nurse Supervisor Saladin's sole involvement with plaintiff was to interview him for

the purpose of responding to his grievance at Step I and to advise him of the outcome of the

specialist's recommendation.  Saladin Aff. (docket no. 14-3).  Saladin did not personally deny the

eye surgery, make medical judgments, or determine a plan of care for plaintiff.  *Id.*  Plaintiff

mistakenly concludes, from the fact that Saladin interviewed him in response to his grievance, that

she was in the chain of decision-makers regarding his care.  Merely because Saladin recounted to

plaintiff a determination made by the Medical Practitioner that, upon review, surgery was not

necessary at that time does not support a claim Saladin made the decision.

HUM Hudson reviewed Saladin's response to the grievance, and signed off as the grievance reviewer. Hudson Aff. (docket no. 14-4). Like Saladin, Hudson did not deny the eye surgery, make medical judgments, or determine a plan of care for plaintiff. *Id.*

A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care).

Plaintiff's allegations of discrimination against these defendants based on another prisoner receiving treatment must fail for the same reason; defendants were not the deciders of whether plaintiff received treatment.

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 13) be **GRANTED** and this action dismissed.


Dated: July 1, 2009                            /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).